The opinion of the Court was delivered by
Johnston, Oh.
Samuel Perdriau, by his last will, gave his negroes and other personal property, and the plantation on which he resided, to his wife Hester, during her natural life. And, at her death, he directed that one-half thereof be delivered to her next of kin.
The other half he directed to be sold by his executor: and that “the proceeds of said sale (of the said half of the estate”) “ be divided between Ann M. China, wife of John China, jr.> the children of my deceased brother Peter Perdriau, and, also’ the children of my sister Hester Wells, alive at the death of my wife, share and share alike, for and during the term of their *27 natural lives, and after their death, to their respective children forever : — the parts of the females, my nieces and Ann M. China, to be to their sole and separate use. It is my will,” he proceeds, “if the said Ann M. China [or] either of the children of my brother Peter or sister Hester should die in my life time, or the life time of my said wife, that the child, or children, of such one or more of them as may so die, take the part of the deceased parent.”
This bill was filed by Hester, the widow of the testator, to obtain the assent of the Court to her relinquishing one-half of the negroes, — for a sale of that half, and for a present distribution of the proceeds among the parties to whom they were bequeathed at the expiration of the life estate.
A decree to that effect has been obtained, from which no appeal is taken except upon one single point. The decree divides the proceeds of sale into three equal parts, and directs one of them to be allotted to Ann M. China, one to the children of Peter Perdriau, and one to the children of Hester Wells. The appellants contend, that Ann M. China, instead of taking one-third part of said proceeds, should take only an equal part with each of the children of Peter Perdriau and Hester Wells: (the issue of any deceased party to represent that party, according to the will.)
In my opinion the appeal is well taken.
It is a material circumstance in this case, that at the death of the testator, Peter Perdriau and Hester Wells, his brother and sister, for whose children his will was intended to provide, were both dead : and their children were then so ascertained, that no additions could be made to their number.
If the testator, under these circumstances, had given an estate directly and unconditionally,- and not suspended upon any prior estate, to Mrs. China and .the children of his deceased brother and sister, it is clear that she and they would have taken each an equal share. As is said, in Conner vs. Johnson, (a) “if *28 there be a devise to an individual, designated by name, and to other individuals, designated as a class: as to A and the children of B — or if it he to the children of A and the children of B — all take equally and per capita.” See also Blackler vs. Webb (2 P. Wms. 283 ;) Lincoln vs. Pelham, (10 Ves. 176;) and Butler vs. Stratton, (3 Bro. Ch. R. 367.) The latter case serves as an illustration of the rule. The devise was “ to John Stratton, and Robert Stratton, and the children of Mary Patterson.” Held, that they all took equally, per capita.
The combination of the name of a particular individual with classes of children, under such circumstances, cannot produce any effect other than would follow, if the bequest were simply to two or more classes of children. The division must be per capita. A case of the latter description is furnished in Ex parte Leith;(b) where the devise was of “ two shares to my deceased sons’ (William and James’s) children.” Without much reliance on the words i! equally to be divided between them,” which followed; it was held, that the two shares, considered as amalgamated, were to be divided among all the children per capita.
If all the legatees be ascertained at the time of the gift, and the gift be direct and unconditional, then, taking by purchase, they must take, each, an equal share. I know of no exception" to this rule, except the late cases of Templeton vs. Walker(c) and Collier vs. Collier.(d) But these cases have, in fact, no application to the principle I am now considering. Those cases proceed on the principle, that, where a testator has given to the “ heirs ” of a particular individual, it being necessary to resort to the statute to ascertain who the heirs are, it may be resorted to for the additional purpose of ascertaining the proportion to which the statute would entitle them: — upon the implication, that where the gift is to “ heirs,” the intention is to give them inheritable portions: — that the beneficiaries are to be presumed to stand in the affections of the benefactor, according to the standard to which he himself has appealed.
*29 In the case before us, the testator has imposed no necessity to refer to the statute. Who the children of his brother and sister are, can be known without resorting to it. And, indeed, whatever information we might obtain from it, in relation to a division among the children of the brother and those of the sister; it can furnish none respecting the proper division between them and Mrs. China. So that the cases I have mentioned have no application to the subject now under consideration.
I have already stated what, in my opinion, would be the proper construction, if the bequest in this case were direct and unconditional.
The bequest is, however, not of that character. It is limited upon a prior life estate; and it is conditioned upon the remainder-men surviving the life tenant. Owing to this circumstance, it has been supposed to fall within the principle of Cole vs. Creyon.(e)
I do not think it comes within the principle of that case.
There, after a life estate given to the wife of the testator, the bequest was to Alexander Creyón and the children of Elizabeth Cole, — testator’s married niece, who survived him.
There are words indicating that the division was to be made equally between them: which perhaps were too little regarded in the decision. But it is not necessary to attend to that. It is the leading principle adjudged, which we are now to ascertain and apply.
It was held in that case, that Creyón was entitled to one-half of the estate, and that the other half was divisible between all the children of Elizabeth Cole who came in esse before the expiration of the prior life estate.
The reasons given for this decision were, — that Creyón, being a person named and not described, took a vested interest in the remainder, at the death of the testator: but that Mrs. Cole’s children, taking by description as children, from the necessity *30 of the case, could take only a contingent interest, their number being incapable of being ascertained until the death of the life tenant. This difficulty arose from the period of division being postponed until that event: because the law is familiar, that where a class of described persons are to take on a future event, all who can bring themselves within the description, at that time, are equally entitled to take. There was a contingency, therefore, as to the children, but hot as to Creyón; — by which their interests, and not his, were aifected. Again: there was a diversity between the parties, in respect to the time when their titles accrued. The parties could not take as joint tenants, because the right of Creyón vested in interest at the death of Hicklin, the testator, while that of the children remained contingent until the death of Hicklin’s widow.
But, as I read the will of Perdriau, there is no interest of a remainder-man that is not subject to equal contingency. The difference between Creyón and Mrs. China is, that his was a certain and uncontingent interest from the death of the testator; her’s is subjected to the same contingencies as to surviving the life tenant as are applicable to the children. All the conditions which are applied by Perdriau to his brother’s and sister’s children, he applies also to Mrs. China. The- persons who are to take, are to take life estates only, with a limitation to issue, and the females, including Mrs. China, are to take separate estates : and contemplating that they might not be alive at the death of his wife, which he had at first view imposed as a condition, (and, adding what occurred to him; — i. e,, that they might possibly die in his own life, so as to occasion a lapse,) he provides that, in either of those events, their children, if they left any, should take in their place : not by way of remainder to their life estates, but as substitutes, — and, in that case, absolutely.
The reasons of the decision in Cole vs. Creyon (viz. the fact that there was a fixed and certain interest in one party and a contingent interest in the others, rendered it necessary to distinguish between them,) do not apply here.
*31 When, on the face of the will, 1 see not only that all parties are put upon the same footing, hut are to “ share and share alike,” I do not perceive any ground to doubt, that the distribution should he made, as contended for in the ground of appeal.
. It is ordered, that the decree appealed from he modified according to this opinion: and that in all other respects, it he affirmed.
Dunkin and Waudlaw, OG., concurred.
Decree modified,

 2 Hill, Ch. 43.

 1 Hill, Ch. 153.

 3 Rich. Eq. 543.

 3 Rich. Eq. 555.

 1 Hill, Ob. 311.